UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FOSTER THOMPSON,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀Case No. 4:13 CV 470ERW(ACL)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
TERRY RUSSELL,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀)

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the Petition of Foster Thompson for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.   This cause was referred to the undersigned United States

Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

### I.  Procedural History

Thompson is presently incarcerated at Eastern Reception Diagnostic and Correctional

Center in Bonne Terre, Missouri pursuant to the Sentence and Judgment of the Circuit Court of the

City of St. Louis, Missouri.   (Respt's Ex. 2 at A1.)

On July 15, 2009, a jury found Thompson guilty of one count of forcible rape, and one

count of incest.   (Respt's Ex. 1 at 305.)   The court sentenced Thompson to twenty-five years'

imprisonment for the forcible rape count, and four years' imprisonment for the incest count, and

ordered that the sentences run concurrently.   (Respt's Ex. 2 at A2.)

Thompson raised two points on direct appeal of his convictions.   (Respt's Ex. 2.)   In his

first point, Thompson argued that the trial court erred by sustaining the state's objection to

counsel's comment in opening statement that the victim's family did not believe she was raped.

*Id.* at 8.   In his second point, Thompson argued that the trial court abused its discretion by not

allowing counsel to ask the victim if her family believed that she was raped on cross-examination. *Id.* at 9. On February 8, 2011, the Missouri Court of Appeals affirmed Thompson's convictions. (Respt's Ex. 3.)

Thompson filed a timely motion for post-conviction relief under Rule 29.15. (Respt's Ex. 4 at 3-57.) After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed. *Id.* at 62-92. The amended motion alleged that Thompson received ineffective assistance of counsel when trial counsel failed to present at trial Thompson's medical records showing his diagnosis and treatment for gonorrhea in March 2008, and medical testimony showing the high likelihood of transmission of gonorrhea from male to female during a single act of vaginal intercourse. *Id.* The motion court denied Thompson's amended motion without an evidentiary hearing. *Id.* at 93-96.

In his sole point on appeal from the denial of post-conviction relief, Thompson argued that the motion court clearly erred in denying his motion without an evidentiary hearing because he received ineffective assistance of counsel when trial counsel failed to present his medical records showing his diagnosis and treatment of gonorrhea around the time of the offense, and medical testimony explaining the likelihood of transmission. (Respt's Ex. 5.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. 6.)

Thompson timely filed the instant Petition on March 13, 2013. (Doc. 1.) Thompson raises four[1] grounds for relief: (1) the trial court violated his rights to due process, a fair trial, to present a defense, and to confront his accuser when it sustained the state's objection to defense counsel's opening statement; (2) the trial court (and the appellate court in affirming his convictions) violated his right to a fair trial, to confront his accuser, and due process when it

---

[1]Thompson sets out five grounds for relief, but his Ground Three is duplicative of Ground Two. As such, the Court will address this claim as "Ground Two."

sustained the state's objection during cross examination of the victim; (3) the motion court (and appellate court in affirming the motion court) erred in denying relief without an evidentiary hearing and without making findings of facts and conclusions of law with respect to all of his *pro se* claims; and (4) he received ineffective assistance of counsel when trial counsel failed to present his medical records showing his diagnosis and treatment for gonorrhea during the time of the alleged rape and to secure and present medical testimony showing the high likelihood of transmission.  *Id.*

On May 23, 2013, Respondent filed a Response to Order to Show Cause, in which he argues that Ground Three is procedurally defaulted and all of Thompson's claims fail on their merits.  (Doc. 10.)  Thompson has filed a Traverse, in which he provides further argument in support of his claims.  (Doc. 11.)

## II. Facts[2]

In February 2008, Thompson began living in a house with family, including Thompson's fifteen-year-old niece, T.M. ("Victim").  On March 7, 2008, Victim, Victim's aunt ("Aunt"), Aunt's boyfriend ("Boyfriend"), and Thompson went to a church dinner.  After dinner, Aunt went to Boyfriend's house, leaving Victim and Thompson to walk home together.  On the way home, Thompson indicated to Victim that he wanted to have sex with her, and that they could do so in Aunt's basement so that they would not get caught.  Victim said no, and commented that Thompson was her uncle.

After returning home, Victim left to stay at her sister's home for the weekend as previously planned.  Victim returned to Aunt's house Monday.  Thompson was the only person home at the time.  Victim went to her room to get dressed for school, shutting the door behind her.

---

[2]The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal.  (Respt's Ex. 3.)

Thompson opened the door and entered the room with Victim, who was dressed in only bra and underwear. Thompson asked Victim if she had thought about their conversation after the church dinner. Victim replied that nothing was going to happen between them. As Thompson began to leave the room, Victim went toward the bed. Thompson re-entered the room and turned off the lights. Thompson then shoved Victim onto the bed and held her down. Thompson then had sex with Victim. After Thompson finished having sex with Victim, he left the room. Victim cleaned herself off with a towel.

Shortly thereafter, Victim's sisters returned home. Victim did not tell her sisters about what had happened. Victim then went to school, where Victim told a friend about what had happened. The friend told Victim to tell someone, and, although she agreed, Victim did not tell anyone about what had happened at that point.

Later, Victim was telling a neighbor about what had happened and Aunt overheard the conversation. Aunt told Victim's Grandmother ("Grandmother") about what she overheard. Grandmother asked Victim if she had been raped, and Victim confirmed that she had. When confronted by the family, Thompson denied what had happened.

Sometime after the family confrontation, a social worker contacted Victim. The social worker had been alerted to the rape by a therapist whom Victim's sister was seeing and had told about the incident. After the social worker talked with Victim, a police officer came to the house to talk with Victim. Victim was interviewed at the child advocacy center, and admitted to being raped.

Detective Michael Herzberg began to investigate the rape. During the investigation he talked with Mother, who indicated that she did not believe Victim and felt that the charges should be dropped. Grandmother also told Victim to get the charges dropped. Victim refused and was taken into foster care.

Thompson was charged with forcible rape and incest. During Thompson's opening statement, Thompson's counsel stated that "None of [Victim's] family believes her." The state objected to the statement as improper comment on the credibility of a witness, and the objection was sustained.

During Thompson's cross-examination of Victim, counsel asked Victim whether or not Grandmother believed Victim. The state again objected to the question as an improper comment on credibility. The objection was sustained.

The jury found Thompson guilty of forcible rape and incest. Thompson filed a motion for a new trial alleging that the trial court erred in sustaining the two objections made by the State. The trial court denied Thompson's motion, and sentenced Thompson to concurrent terms of twenty-five years for forcible rape and four years for incest.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court

decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## IV.   Procedural Default

Respondent contends that Ground Three is procedurally defaulted.   In Ground Three, Thompson argues that the motion court (and appellate court in affirming the motion court) erred in denying relief without an evidentiary hearing and without making findings of facts and conclusions of law with respect to all of his *pro se* claims.   Respondent argues that Thompson defaulted this claim by failing to raise it in his appeal from the denial of post-conviction relief.

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.   *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)).   Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

In cases of procedural default, federal courts are barred from reaching the merits of the defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's] efforts to comply with the State's procedural rule" in order to show "cause" for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable. *Id.* If a petitioner cannot show 'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted. *See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir. 1987).

As cause for his procedural default, Thompson argues that post-conviction appellate counsel was ineffective in failing to raise this claim in his post-conviction appeal. Attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default. *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012). But ineffective assistance of counsel in not raising a claim on appeal from the denial of post-conviction relief does not constitute cause. *Id.* at 1320; *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). Thus, Thompson has not established cause to excuse his procedural default.

Thompson also appears to allege actual innocence to excuse his default. A claim of actual innocence "requires petitioner to support his allegations of constitutional error with new

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). Petitioners asserting innocence as a gateway to defaulted claims must establish that in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327; *see also McQuiggin v.. Perkins,* 133 S.Ct. 1924, 1932 (2013). Thompson does not present any new evidence to support his claim of actual innocence.

Thus, Ground Three is procedurally defaulted.

## V. Thompson's Claims

**1.    Ground One**

In his first ground for relief, Thompson argues that the trial court erred in sustaining the state's objection to defense counsel's comment during opening statement that the victim's family did not believe she was raped. Thompson claims that the trial court's ruling prevented him from making an opening statement outlining for the jury the evidence that would be elicited on cross-examination showing that the victim lacked credibility.

Thompson raised this claim in his direct appeal. The Missouri Court of Appeals noted that, under Missouri law, opening statements should not include references to inadmissible evidence. (Respt's Ex. 3 at 4.) The court held:

> Defendant argues that counsel should have been allowed to comment that members of Victim's family stated that they did not believe she was raped during opening statement. However, this would have been inadmissible hearsay evidence, as counsel intended to offer this evidence through the cross-examination of Victim. Victim testifying as to what her family had said would be an inadmissible hearsay statement, because it would be an out of court statement offered for the truth of the matter asserted. *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007). Therefore, because Victim's testimony about her family's stated disbelief in her claims would have been inadmissible, the trial court did not

> abuse its discretion in sustaining the State's objection to counsel's assertion in opening statement. Point denied.

*Id.*

Under federal law, a trial court has broad discretion in controlling the direction of opening statements. *See United States v. Contrad*, 320 F.3d 851, 855 (8th Cir. 2003). Moreover, federal law provides that "[t]he only purpose of opening statements is to inform the jury what the case is about and to outline the proof that will be used on the one hand to establish the commission of the crime and on the other to outline the defense-so that the jurors may more intelligently follow the testimony as it is related by the witnesses." *Foster v. United States*, 308 F.2d 751, 753 (8th Cir. 1962).

This Court will not grant relief simply because a state court may have made an incorrect evidentiary ruling, unless that evidentiary ruling infringed on a specific constitutional right or violated due process by infecting the entire trial. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). "Where the state interest [in excluding evidence] is strong, only the exclusion of critical, reliable and highly probative evidence will violate due process. The state's interest in excluding hearsay testimony is undeniably strong." *Sweet v. Delo*, 125 F.3d 1144, 1158 (8th Cir. 1997).

The state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of federal law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Consistent with federal law, the trial court considered the broad discretion afforded the trial court in determining the scope of opening statements. Defense counsel's comment during opening statement that members of Victim's family said that they did not believe her would have been inadmissible hearsay evidence because the defense intended to present this evidence through the cross-examination of Victim.

Accordingly, the undersigned recommends that Ground One be denied.

**2.     Ground Two**

In his second ground for relief, Thompson argues that the trial court (and the appellate court in affirming his convictions) violated his right to a fair trial, to confront his accuser, and due process when it sustained the state's objection during cross examination of the victim. Specifically, the state objected when defense counsel asked Victim if her grandmother believed that she was raped (Respt's Ex. 1 at 210) and the objection was sustained.

Thompson raised this claim in his direct appeal.   The Missouri Court of Appeals held as follows:

> For issues properly preserved for review, decisions on the admission of evidence are reviewed for abuse of discretion.   *State v. Speaks*, 298 S.W.3d 70, 80-81 (Mo. App. E.D. 2009). Furthermore, even if evidence is erroneously excluded, such error is not grounds for reversal unless the exclusion of that evidence also prejudiced the defendant.   *Id.* at 81.
>
> As discussed above, Victim's testimony would be offering out of court statements by members of Victim's family for the truth of the matter stated.   Therefore it would be inadmissible as hearsay.

(Respt's Ex. 3 at 5.)

The decision of the state courts was not contrary to or an unreasonable application of clearly established federal law.   The testimony defense counsel was attempting to elicit from Victim-whether her family members did not believe she was raped-would have been inadmissible hearsay evidence.   Further, Thompson has not demonstrated that the exclusion of this testimony affected the outcome of the trial, such as to amount to a due process violation.

Thus, the undersigned recommends that Ground Two be denied.

**3.     Ground Three**

In his third ground for relief, Thompson argues that the motion court (and appellate court in affirming the motion court) erred in denying relief without an evidentiary hearing and without making findings of facts and conclusions of law with respect to all of his *pro se* claims.

The undersigned has already found that Thompson procedurally defaulted this claim by failing to raise it in his appeal from the denial of post-conviction relief.   In addition, the alleged errors in the state post-conviction proceedings do not constitute errors of constitutional magnitude and are thus not cognizable in federal habeas corpus proceedings.   *See Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994) ("an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition").

Accordingly, the undersigned recommends that that Ground Three be denied.

**4.     Ground Four**

In his fourth ground for relief, Thompson argues that he received ineffective assistance of counsel when trial counsel failed to present his medical records showing his diagnosis and treatment for gonorrhea during the time of the rape and to secure and present medical testimony showing the high likelihood of transmission during an act of intercourse.

At trial, Thompson testified that he began living in the same house as Victim after he was released from the Medium Security Institution ("MSI") on February 25, 2008.   (Respt's Ex. At 255.)   During redirect and recross Thompson testified as follows:

> [Defense counsel]:   Now, when you came home from being in jail, did you have a medical problem?
>
> [Thompson]:   No, ma'am—oh, yes, ma'am, I apologize.   Not at this particular hour, but I had gonorrhea like—I caught gonorrhea from a female friend of mine.   Her name is [ ].   She had g[iven] me gonorrhea, so I did have a medical problem.

[Defense counsel]:   Did you have gonorrhea in the early part of March of 2008?

[Thompson]:   Yes, ma'am.

***

[Prosecutor]:   Did they give you antibiotics at MSI?

[Thompson]:   No, I caught the disease when I got out of MSI.

[Prosecutor]:   When you got out of MSI?

[Thompson]:   Yes, ma'am.

[Prosecutor]:   And you had just gotten out on February 25th of 2008, right?

[Thompson]:   Yes, ma'am.

[Prosecutor]:   So by March 10th, you already had full-blown gonorrhea?

[Thompson]:   Yes, ma'am.

[Prosecutor]:   Why is March 10th a significant date for you if nothing happened?

[Thompson]:   What do you mean?

[Prosecutor]:   How do you know you had gonorrhea on March 10th if nothing happened on March 10th?

[Thompson]:   Because I already knew I had gonorrhea because I was in the clinic for it.

[Prosecutor]:   Did you bring your medical records?

[Thompson]:   No, ma'am.

*Id.* at 272-74.   During closing argument, the prosecutor stated that Thompson's:

story about gonorrhea is just ridiculous, okay?   He did not have full-blown gonorrhea within 14 days of having been released and been to the clinic and knowing he had it on March 10th with no medical records to support it.   He

didn't even mention it until Redirect Examination. That's absurd."

*Id.* at 303.

Thompson raised this claim in his motion for post-conviction relief and in his appeal from the denial of post-conviction relief. Specifically, Thompson argued that counsel was ineffective for failing to present at trial his medical records showing his diagnosis of gonorrhea on March 27, 2008. He contended that the "incubation period" for gonorrhea is two to thirty days, and symptoms usually appear two to five days after infection, although symptoms in men may take up to a month to appear. (Respt's Ex. 4 at 68-69.)

The Missouri Court of Appeals held as follows:

> At trial, [Thompson] testified that he contracted gonorrhea after February 25, 2008 and before March 10, 2008. [Thompson] stated that he knew he had gonorrhea on March 10, 2008, because he had been to the "clinic." But [Thompson]'s amended motion including the medical records show that [Thompson] was not diagnosed and treated until March 27, 2008, seventeen days after the crimes were committed. The amended motion states that the "incubation period" for gonorrhea is two to thirty days and symptoms usually appear two to five days after infection. [Thompson] could have contracted gonorrhea after March 10, 2008. Review of the entire record does not show a reasonable probability that but for counsel's alleged ineffectiveness, the result of the proceeding would have been different.

(Respt's Ex. 6 at 5-6.)

In order to state a claim of ineffective assistance of trial counsel, Thompson must meet the *Strickland* standard: Thompson must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential,

because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (internal quotations and citations omitted).

The Missouri courts reasonably applied *Strickland*. Thompson's medical records showing treatment for gonorrhea on March 27, 2008, would not have presented a viable defense for the March 10, 2008 rape. Thompson is, therefore, unable to demonstrate prejudice resulting from defense counsel's failure to present his medical records or medical testimony at trial. The decision of the state courts was neither contrary to nor an unreasonable application of federal law.

Accordingly, the undersigned recommends that Ground Four be denied.

## VI. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Thompson has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the Petition of Foster M. Thompson for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of January, 2016.